590 F.2d 35
 David SEIGAL and Ethel Seigal, Plaintiffs-Appellants,
v.
David MERRICK, Defendant,
and
William T. Gossett, William R. Hearst, Jr., Warren Hellman,
H. Blackmer Johnson, John H. Johnson, William C. Keefe,
Ralph F. Lewis, Malcolm A. MacIntyre, Harry McIntyre, John
T. Pollock, Dennis C. Stanfill, Gordon Stulberg, Gerald
Trautman, John L. Vogelstein, Defendants-Appellants,
and
Twentieth Century-Fox Film Corporation, Defendant,
and
Muriel Koby, George Rosen and Sandra Sachs,
Intervenors-Objectors-Appellees.
Harry GEHLER, Plaintiff-Appellant,
v.
William R. HEARST, Jr., H. Blackmer Johnson, John J.
Johnson, William C. Keefe, Malcolm A. MacIntyre, John T.
Pollock, Ralph Lewis, Dennis C. Stanfill, Gordon Stulberg,
Gerald A. Trautman, William T. Gossett, Defendants-Appellants,
and
David Merrick, Defendant,
and
Twentieth Century-Fox Film Corporation, Defendant,
and
Muriel Koby, George Rosen and Sandra Sachs,
Intervenors-Objectors-Appellees.
 Nos. 141, 235, Dockets 77-7566, 77-7576.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 29, 1978.
Decided Dec. 14, 1978.
 
 Edwin E. McAmis and Peggy L. Kerr, New York City (Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for defendants-appellants.
 Martin R. Gold, New York City (Gold, Farrell & Marks, New York City, of counsel), for plaintiffs-appellants.
 Norman Annenberg, New York City, for intervenors-objectors-appellees.
 Kaufman, Taylor, Kimmel & Miller, New York City (Stanley L. Kaufman, Irving Malchman and Roger W. Kirby, New York City, of counsel), for amicus Stockholders Louis Weiss and Eileen Weiss.
 Before LUMBARD, MOORE and GURFEIN, Circuit Judges.
 GURFEIN, Circuit Judge:
 
 
 1
 Both the plaintiffs and the defendant-directors in two stockholder derivative actions brought on behalf of Twentieth Century-Fox Film Corp. ("Fox") appeal from an order of the District Court (Hon. Constance Baker Motley, Judge ) Refusing approval of a stipulation of settlement under F.R.Civ.P. 23.1. The settlement that was disapproved by Judge Motley involved the granting of options, which were restricted in certain ways, to defendant-directors at a certain striking price, a consideration being paid for the options. The objectors attacked the settlement as illusory and unfair to Fox.
 
 
 2
 Fox and objectors to the settlement have moved to dismiss the appeal on the ground that the order of the District Court refusing to approve the settlement is not an appealable order. Fox contends that appellants, by the terms of the stipulation, have waived their right to appeal. The objectors add that the order, even without regard to the stipulation, is not a final order.28 U.S.C. § 1291. We hold that the refusal of the District Court to approve a settlement in a stockholder derivative action is not appealable under § 1291.
 
 
 3
 The question is one of first impression in this circuit. On its face the order is clearly not a final order within the literal meaning of 28 U.S.C. § 1291, for the order did not result in a judgment that would terminate the proceeding. Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945). Nor did appellants seek an order from the District Court under 28 U.S.C. § 1292(b) certifying that the non-appealable order involves a controlling question of law.
 
 
 4
 The only ground upon which appealability may conceivably be premised is the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In that well-known case, the question was whether a federal court, having jurisdiction of a stockholder derivative action through diversity of citizenship, must apply a statute of the forum state which made plaintiffs post security for costs and certain expenses as a condition to suit. The District Court had decided that the state statute was not applicable to an action in the federal court. 7 F.R.D. 352 (D.N.J.1947). The Court of Appeals thought otherwise and reversed. 170 F.2d 44 (3d Cir. 1948).
 
 
 5
 The Supreme Court held the decision appealable because it
 
 
 6
 appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. . . .
 
 
 7
 We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.
 
 
 8
 337 U.S. at 546-47, 69 S.Ct. at 1225-26.
 
 Significantly, the Court added:
 
 9
 But we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question.
 
 
 10
 337 U.S. at 547, 69 S.Ct. at 1226.
 
 
 11
 Thus, Cohen decided an important categorical question of federalism which, because it could arise only at the threshold of litigation, had to be reviewed before final judgment if an appellate decision was to have any meaning.
 
 
 12
 Cohen v. Beneficial, as might have been expected, has spawned a host of legitimate and illegitimate progeny. As we have had occasion to note, "Cohen must be kept within narrow bounds, lest this exception swallow the salutary 'final judgment' rule." Weight Watchers of Philadelphia v. Weight Watchers International, 455 F.2d 770, 773 (2d Cir. 1972) (citations omitted). We had earlier declared that the gist of the Cohen doctrine "revolved about issues concerning the Power of the district court to render its decision, as distinct from the propriety of its exercise of discretion." Bancroft Navigation Co. v. Chadade Steamship Co., 349 F.2d 527, 529 (2d Cir. 1965) (emphasis in original). And while we, like other circuits, have probably not been entirely consistent in our application of the collateral order doctrine, we have tended to adhere to our disinclination to erode the finality doctrine by indirection.
 
 
 13
 The Supreme Court has recently given an even firmer direction to this trend. In Coopers and Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Court held that a determination that an action may Not be maintained as a class action is not appealable as a matter of right, even though it may spell the "death knell" of the action. The Court there noted that to be appealable the "order must conclusively determine the disputed question . . . ." Id. at 2458. That test cannot be met for an order disapproving a settlement. Such an order is based, in part, upon an assessment of the merit of the positions of the respective parties, and permits the parties to proceed with the litigation or to propose a different settlement.
 
 
 14
 A settlement in an ordinary civil litigation is normally the sole concern of the parties. In stockholder derivative actions, on the other hand, because of the vicarious representation involved, the court has a duty to perform before an action can be "settled." The court must "approve" the settlement under F.R.Civ.P. 23.1.[1] This approval cannot be a rubber stamp adoption of what the parties alone agree is fair and equitable. The test is more rigorous.[2]
 
 
 15
 The Court also declared in Livesay that "allowing appeals of right from nonfinal orders that turn on the facts of a particular case thrusts appellate courts indiscriminately into the trial process and thus defeats one vital purpose of the final judgment rule 'that of maintaining the appropriate relationship between the respective courts. . . . This goal, in the absence of most compelling reasons to the contrary, is very much worth preserving.' Parkinson v. April Industries, Inc., 520 F.2d 650, 654 (CA 2, 1975)." 98 S.Ct. at 2462 & n.29.
 
 
 16
 The latest word from the Supreme Court serves as a guide to our decision. The requirement of court approval for compromises, as we know, is found in the Federal Rules of Civil Procedure. That code applies to District Courts alone. F.R.Civ.P. 1. There is no provision for the substitution of an appellate opinion save when the settlement decree is final, in which case appellate review is still subject to severe limitations.
 
 
 17
 The determination of whether to approve a Rule 23.1 settlement is peculiarly an amalgam of fact and law. Most derivative actions probably are settled rather than litigated to final judgment. This course of settlement, however, is not a deviation from the main path of the litigating process. It is a step on that path directly leading to final judgment. An approval of a compromise, after appropriate notice, becomes a final judgment. Smith v. Alleghany Corp., 394 F.2d 381, 391 (2d Cir.), Cert. denied, 393 U.S. 939, 89 S.Ct. 300, 21 L.Ed.2d 276 (1968). So, a Disapproval of a compromise that would have resulted in a final judgment if it had been approved is not different from a denial of summary judgment or the grant of a new trial which are surely not appealable orders. See Compagnie Nationale Air France v. Port of New York Authority, 427 F.2d 951, 954 (2d Cir. 1970). In only one sense, of course, is the refusal to approve a proposed settlement final, for that Particular settlement will never be revived.
 
 
 18
 One cannot, as appellants here urge us to do, successfully separate specific questions of law from the settlement as a whole. An appellate court is severely restricted when it attempts to weigh the chances of success of the plaintiff's case against the sufficiency of the settlement. That is particularly true when the credibility of experts is involved, and when, as here, the settlement itself involves a complicated formula of give and take.
 
 
 19
 It is easy enough to suggest that we can rely on the elusive test of "abuse of discretion" as our guide. The difficulty is that if we remand for alleged errors of law, we still cannot force the District Court to exercise the ample remaining balance of its discretion to reach a result contrary to its original decision.
 
 
 20
 What is even more striking here is that appellants contend that Judge Motley, in fact, failed to use her discretion because she did not evaluate the likelihood of success in the plaintiffs' case. Hence, they assert, she rested her decision entirely upon an erroneous resolution of two "purely" legal issues at what date the value of an option is measured and whether the particular value of an option is measured by market considerations without evaluating the personal stake which the Particular optionee already has and will have in terms of control of the corporation.
 
 
 21
 Assuming that it were possible to decide these questions as if they were legal abstractions, and that we remanded, Judge Motley could still properly proceed to balance the chances of litigation against some new putative value of the settlement and thus render our determinations merely precatory. In fact, if we were to entertain the appeal, ". . . there is no assurance that the trial process will not again be disrupted by interlocutory review." Livesay, 98 S.Ct. at 2461. For the denial of one compromise does not necessarily mean that a "sweetened" compromise may not be approved. The management of a derivative suit gives the trial judge a chance not only to disapprove a compromise but to edge the parties toward more equitable terms.
 
 
 22
 This particular litigation illustrates that concretely. While this appeal was pending, the parties entered into an amended stipulation which purportedly made the settlement more attractive for Fox. There was an attempt to submit the "appellate" settlement to us for approval. We declined to entertain it as beyond our jurisdiction. The making of the new compromise emphasizes the very point, however, that it might have been presented to the District Court. If settlement denial orders were held appealable, one could foresee a series of disapprovals and a series of appeals.
 
 
 23
 We recognize that in the only case raising the question of appealability of an order refusing to approve the settlement of a derivative action (brought under the Investment Company Act of 1940, 15 U.S.C. § 80a-1 Et seq.), a panel of the Ninth Circuit, in an opinion by District Judge Battin, held the order to be appealable as a collateral order. Norman v. McKee, 431 F.2d 769 (9th Cir. 1970), Cert. denied, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971).[3] In Norman v. McKee, the court emphasized that a trial would be expensive and lengthy and that, hence, the cost and delay of piecemeal review, as balancing factors, were diminished in importance.
 
 
 24
 We know that this argument that justice will be denied by delay has been made a cardinal point in many and diverse instances where review is sought of interlocutory orders. We have set ourselves resolutely against this consideration which, if freely accepted, would in time completely dilute the finality rule. See U. S. Tour Operators Ass'n v. Trans World Airlines, Inc., 556 F.2d 126, 128 (2d Cir. 1977). With great respect, we must differ with our friends on the Ninth Circuit, for the reasons we have given, and deny appealability to this order. We think, moreover, that a contrary trend has set in since 1970 when Norman v. McKee was decided, which has, thus far, culminated in Livesay, supra.
 
 
 25
 In view of our disposition, we need not enter into the semantic debate on whether the stipulation of settlement waived a right to appeal in the event that the District Court should refuse to approve the settlement.
 
 
 26
 The appeal is dismissed.
 
 
 
 [1]
 Rule 23.1: "The action shall not be dismissed or compromised without the approval of the court . . . ."
 
 
 [2]
 The standard for approval of compromises in stockholder derivative actions involving alleged breaches of the securities laws is akin to the standard used in bankruptcy reorganization. See Saylor v. Lindsley, 456 F.2d 896, 904 (2d Cir. 1972). And the Bankruptcy Act standard of "fair and equitable" (11 U.S.C. § 574, 621(2)) applies "to compromises just as to other aspects of reorganizations." Protective Committee for Independent Stockholders v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). "Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." Id. at 424-25, 88 S.Ct. at 1163
 
 
 [3]
 The Eighth Circuit also reviewed such an order on the merits, but the question of appealability had neither been raised nor discussed. See In re International House of Pancakes Franchise Litigation, 487 F.2d 303 (8th Cir. 1973)